ARTHUR W. BROWAND, Respondent, v. SCOTT LUMBER COMPANY, INC., et al., Appellants.

Devlin, Diepenbrock & Wulff, Pillsbury, Madison & Sutro, Francis N. Marshall, G. H. Eckhardt, Jr., Rich, Weis, Carlin & Fuidge, V. L. Diepenbrock, Richard H. Fuidge and Glenn D. Newton for Appellants.

Carlton & Shadwell, Hiram R. Baker and Claude H. Caldwell for Respondent.

PEEK, J.—By his action plaintiff sought punitive as well as compensatory damages for injuries received in the course of an altercation with the defendant McFairen, sued herein as McFeran. The Scott Lumber Company and Raymond Berry, its vice president and general manager, were joined as defendants on the theory that McFairen's acts were committed in the course of his employment as the servant of each, thereby invoking the doctrine of *respondeat superior*. The jury found against all defendants, each of whom has now appealed from the judgments thereafter entered. Additionally the defendant Berry has appealed from the denial of his motions for nonsuit, for a directed verdict, and for judgment notwithstanding the verdict.

The facts pertinent to the contentions made show that at

the conclusion of the trial the jury returned verdicts in favor of plaintiff and against each defendant as follows: Against McFairen, compensatory damages in the sum of $2,000 but no punitive damages; against defendant Scott Lumber Company, compensatory damages in the sum of $10,000 but no punitive damages; and against defendant Berry, punitive damages alone in the sum of $5,000.

Upon examination of the verdicts the court requested that counsel together with the reporter and clerk meet in his chambers. The court, without stating the exact amounts, noted the variance in the awards and suggested to counsel that although the verdicts were ambiguous he was satisfied that he could correct the error by instructing the jury to return for that purpose. Attorney Newton, an associate counsel for the lumber company, replied that the verdicts were contrary to law and the instructions of the court, but he contended that since they were clear as to the amounts, the court had no jurisdiction. Attorney Diepenbrock, on behalf of Berry, joined with Attorney Newton in his comments, and added that it would be "an abuse of your honor's discretion or jurisdiction to return them to the jury room under any other or additional instructions." At the request of Attorney Fuidge, also an associate counsel for Scott Lumber, the court read the specific amounts set forth in the verdicts. Attorney Carlton for plaintiff agreed with the court stating that it should "properly advise the jury and try to eliminate the confusion from its mind so that they may return a verdict or verdicts which are consistent with legal principles regardless of who they may be for or against." Mr. Newton, jointly with Mr. Fuidge, stated that the amount of "compensatory damages fixed against McFairen must be the maximum so far as Scott Lumber Company is concerned . . . it necessarily follows that the Scott Lumber Company cannot be assessed for more." Attorney Diepenbrock stated that in addition to Newton's comments he made the further objection that the verdict did not follow the instructions of the court and was contrary to law in that it found against defendant Berry for punitive damages and did not find compensatory damages, and concluded his remarks with: "I further request and move the court that the verdicts as entered—the verdicts as read be entered and recorded." Both Newton and Fuidge made the same motion. After further discussion between the court and Newton, Diepenbrock again asked for "a formal ruling on my motion," and the same was denied by the court.

Thereafter court was again convened and the proceedings resumed before the jury. The court asked for the verdicts in order of submission, taking up first that against the defendant McFairen. Newton then stated, "I make the formal motion that each of the verdicts be read and that they be recorded as the verdict of the jury." Mr. Fuidge stated, "We join in that motion," and Mr. Diepenbrock added, "And I likewise, your honor." The motion was denied by the court. Thereupon the verdict against McFairen was read, the jury polled and the clerk instructed to enter the verdict. After a discussion by the court embodying further instructions to the jury, the suggestion was made by Fuidge that the foreman be instructed to correct the verdict against the lumber company by reducing it from $10,000 to $2,000. This was denied by the court. Thereupon Attorney Carlton moved that in view of the apparent confusion the jury be given all of the verdicts for further consideration. This motion was likewise denied by the court which observed that the McFairen verdict had already been entered and the court was of the opinion it had the power to send the remaining verdicts back to the jury for consideration if they desired so to do. Mr. Diepenbrock then stated, "At this time [I] move that the verdict as far as the defendant Berry is concerned be entered and recorded." Again the motion was denied. The verdicts were then returned to the jury and it retired for further deliberation. Upon return of the jury its verdicts were announced and the jury polled. Following the instructions by the court to the clerk to enter the verdict against the Scott Lumber Company, Mr. Fuidge objected to the entry thereof on all of the grounds previously mentioned. Attorney Newton joined in such objection. The court overruled the objection and the verdict was entered. Thereupon the verdict against Berry was read and the jury again polled. Mr. Diepenbrock then moved that the verdict not be entered without waiving other grounds theretofore made, which motion was denied.

As the record now stands the final verdicts as entered disclose an award for compensatory damages against McFairen in the sum of $2,000 with no award as to punitive damages; against the lumber company and Berry, the verdicts were in like amounts—$2,000 as compensatory damages and $11,000 as punitive damages.

The contentions of defendants are (1) that the original verdicts determined every issue raised and that the action

taken and statements made by the court in ordering the entry of the McFairen verdict and in returning the other two verdicts to the jury, was unlawful and prejudicial; (2) that the awards of punitive damages against Scott and Berry were improper for the reason that their liability rested upon the doctrine of *respondeat superior* and the jury failed to find McFairen's acts to have been malicious; (3) that as a matter of law there was no evidence to support the finding that McFairen was an employee of Berry; and (4) that even assuming the award of punitive damages against Berry and Scott was free of compulsion by the court and lawfully arrived at, the amounts are excessive as a matter of law.

There can be no question but that the original verdicts as returned by the jury were defective, and that the provisions of section 619 of the Code of Civil Procedure empowered the court to return the verdicts to the jury for further deliberation. That section reads as follows:

''When the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the court, or the jury may be again sent out.''

Defendants do not question the power of the court under that section but argue that the initial determination by the jury was that Scott Lumber as the admitted employer of McFairen was liable in compensatory damages, and that the failure to find compensatory damages against Berry was a determination that he was not an employer of McFairen. Therefore, defendants argue, the court was confronted with a situation which it could have handled in one of four different ways: (1) Enter judgment in accordance with the jury's intent which they argue was clearly expressed by the valid portions of the verdict, and disregard the remainder as surplusage; (2) direct the jury to make the necessary corrections to cure the informalities, thereby conforming to the instructions; (3) enter the verdicts as returned and correct the informalities on defendants' motion for a new trial; or (4) set all of the issues at large by returning all of the verdicts to the jury for reconsideration on all of the issues. Furthermore they say having failed to follow any of these courses the splitting of the verdicts was error. All, including McFairen's, should have been returned to the jury or none should have been returned.

At the outset of a discussion of defendants' contention, it should be noted that counsel for each defendant

specifically moved the court for entry of the McFairen verdict. By virtue of their collective request for and acquiescence in the action of the court in the entry of said verdict, they cannot now attack that which they affirmatively participated in bringing about. ██ It has long been the rule that consent to the entry of a judgment is a waiver of any errors in it and it will not be disturbed on appeal by the party who expressly consented to the making thereof. (*Morrow* v. *Learned*, 76 Cal.App. 538 [245 P. 442]; and *Dietrichson* v. *Western Loan & Bldg. Co.*, 123 Cal.App. 358 [11 P.2d 64].)

██ When counsel for each defendant moved the entry of the verdict against McFairen and the same was granted by the court, the maximum amount of compensatory damages which could be awarded against the remaining defendants was thereby established. At no time during the course of the discussion between the court and counsel was it contended, as defendants now argue, that "Splitting the verdicts was error—all, including McFairen's, should have been returned or none." Such argument is advanced for the first time on appeal. It is true that defendants did request that the remaining verdicts be entered, but obviously those verdicts were improper. When the court denied their motion to enter the remaining verdicts, they then had the opportunity to request that all should be entered. However, they chose to have the McFairen verdict returned.

While the better practice would have been to have returned all of the verdicts to the jury, it cannot now be said under the facts previously noted that the court erred in failing to do so. In light of the McFairen verdict which set the amount of compensatory damages, neither of the remaining verdicts was consistent, hence the court did not err in returning those verdicts to the jury under the power granted it by section 619.

We therefore turn to a consideration of the question raised by the award of punitive damages against Scott Lumber Company and Berry, and the lack of such an award as against McFairen.

██ It is the general rule that a plaintiff is never entitled, as a matter of right, to punitive damages. (*Brewer* v. *Second Baptist Church*, 32 Cal.2d 791 [197 P.2d 713].) Such damages are but incidents to the cause of action, and can never constitute the basis thereof. ██ It is also true that ". . . since exemplary damages are, under the terms of section 3294

of the Civil Code, to be awarded in addition to the actual damages and as damages 'for the sake of example and by way of punishing the defendant,' it would seem to be a rule of reason that where the defendants, though joint tort-feasors, in an action for malicious prosecution, as well as in other actions, have been guilty of different degrees of oppression, fraud or malice so as to justify a verdict or verdicts for exemplary damages under the above-quoted section of the code, and where such damages under said section are to be awarded 'for the sake of example and by way of punishing' each particular defendant according to the measure of his offending, juries should be allowed so to admeasure and apportion such exemplary damages as to make the example as well as the punishment fit the offense.'' (*Thomson* v. *Catalina,* 205 Cal. 402 at pages 405 and 406 [271 P. 198, 62 A.L.R. 236].)

Although the element of joint tort feasors is not present in the instant case, and although no California case precisely in point has been cited by counsel, we see no reason why the same rule should not apply where as here the employer's liability, if any, is predicated upon the doctrine of *respondeat superior.*

The fact that the jury made no award of punitive damages as against McFairen was not, as defendants contend, necessarily an implied finding that his acts were without malice. As previously noted, even though an act be malicious, it is still within the sole discretion of the jury whether or not an award shall be made. The verdict of the jury did not exonerate McFairen. (See *State Rubbish etc. Assn.* v. *Siliznoff,* 38 Cal.2d 330 [240 P.2d 282].) It was simply silent as to the question of punitive damages. Moreover the record contains no evidence to support the inference as contended by defendants. In fact the record is to the contrary. Thus after the jury had returned to the courtroom for the last time and just before returning to the jury room for further deliberations, one juror asked the court, ''Was Mr. McFairen . . . fined in the justice court?''

Furthermore since evidence of a defendant's wealth is admissible to enable the jury to determine what amount of punishment should be imposed by compelling him to pay a fine (*Marriott* v. *Williams,* 152 Cal. 705 [93 P. 875, 125 Am.St. Rep. 87]), it would appear equally proper to consider, as obviously the jury here did, what other punishment the defendant McFairen had received for the same act, and in the

exercise of its discretion to conclude that his conviction and fine in the justice's court was sufficient punishment for him. In other words, the jury might well have determined that Mc-Fairen had been punished but that Berry and the lumber company had not, and by its verdict sought to make the "example as well as the punishment fit the offense." (*Thomson* v. *Catalina, supra.*)

This was precisely the situation in *Davis* v. *Hearst*, 160 Cal. 143 [116 P. 530]. There the court said, " ' . . . it would appear practicable to allow a recovery of an amount against all as compensatory damages, and a further amount against some as exemplary damages, (and such verdict would be just if the evidence warranted it), and it would not seem impracticable to so shape the verdict as to bring about this result.' "

Defendants further argue that in any event the amount of punitive damages awarded was excessive. ▆ The Supreme Court stated in *Finney* v. *Lockhart* (35 Cal.2d 161 [217 P.2d 19]) that while exemplary damages should bear a reasonable relationship to the actual damages, that rule is only for the purpose of guarding against excess and "there is no fixed ratio by which to determine the proper proportion between the two classes of damages." The court after further discussion of this question stated——

". . . it is the province of the jury, and the trial court on the motion for a new trial, to say whether punitive damages should be awarded. The presumptions are in favor of the correctness of the verdict and judgment. After an award has been approved by the trial court the reviewing court will hesitate to declare the amount excessive unless upon consideration of the entire record including the evidence it must be said that the award was the result of passion or prejudice."

The same argument now made by defendants was also made to the trial court upon their motion for a new trial, and the court after due deliberation, by a qualified order reduced the amount of punitive damages and the same was agreed to by the plaintiff. Under such circumstances we cannot say that the reduced amount thereof is excessive as a matter of law. (*State Rubbish, etc. Assn.* v. *Siliznoff, supra.*)

▆ It is further contended by appellants that the court erred in denying Berry's motion for a nonsuit, his motion for a directed verdict, and his motion for judgment notwithstanding the verdict. The argument made in support of such

contention is that as a matter of law there was no evidence upon which a jury could find that McFairen, the admitted employee of the defendant lumber company, was also an employee of Berry.

Whether or not McFairen was an employee of Berry as well as of the lumber company was essentially a question of fact. (*Brokaw* v. *Black-Foxe Military Institute*, 37 Cal.2d 274 [231 P.2d 816].) Here there was evidence that McFairen performed personal services at least to a degree for the Berrys in and about their home on the corporation's ranch. Moreover, there was testimony by plaintiff as well as by two witnesses for the defendant relative to statements by Berry that McFairen was his employee. Under such circumstances we cannot say that the court erred in denying the various motions made by Berry since we cannot see as a matter of law that there was no evidence to support such conclusions.

The judgments and orders are affirmed.

Van Dyke, P. J. and Schottky, J., concurred.

A petition for a rehearing was denied June 4, 1954, and appellants' petition for a hearing by the Supreme Court was denied June 30, 1954.